### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

BROOKE HINTON,

        **Plaintiff,**

    **vs.**

SHOOTER ALLEY, INC.,
JOAQUIN RAMU, and
LOUIS RAMU,

        **Defendants.**

Civil Action No. _____

## COMPLAINT

Plaintiff Brooke Hinton ("Hinton") brings this Complaint against Defendants Shooter, Alley, Inc., ("Shooter Alley"), Joaquin Ramu ("J. Ramu") and Louis Ramu ("L. Ramu") (collectively "Defendants") and shows this Court as follows:

### Introduction

This is a wage and hour case and Defendants are Hinton's former employers. During her employment, Defendants misclassified her as an independent contractor; employed her on a tips-only basis; forced her to pay them kickbacks while participating in an illegal tip pool; and failed to pay her an overtime premium all in violation of the FLSA minimum wage and maximum hours provisions, 29 U.S.C. §§ 206 and 207.

## Jurisdiction and Venue

### 1.

This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and FLSA §16(b), 29 U.S.C. §216(b), 28 U. S.C §§ 1331 and 1337, because this case arises under the FLSA, a federal statute that affects interstate commerce.

### 2.

Venue properly lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391 because Shooter Alley's principal business address is located in this judicial district, J. Ramu and L. Ramu reside in this judicial district, and a substantial portion of the events giving rise to the claims herein arose in this judicial district.

## Parties

### 3.

Hinton is a natural person whom resides in Gwinnett County, Georgia.

### 4.

Shooter Alley is a domestic for profit corporation organized under the laws of the State of Georgia.

### 5.

Shooter Alley is subject to the personal jurisdiction of this Court.

6.

Shooter Alley may be served with process through its registered agent Edward M. Gilgot at 309 Sycamore Street, Decatur, Georgia 30030.

7.

J. Ramu is a natural person residing in DeKalb County, Georgia.

8.

J. Ramu is subject to the personal jurisdiction of this Court.

9.

At all times material to this action, J. Ramu has been the CEO and CFO of Shooter Alley.

10.

J. Ramu may be served with process at his residence located at 3335 Donegal Way, Snellville, Georgia 30039, or wherever he may be found.

11.

L. Ramu is a natural person residing in DeKalb County, Georgia.

12.

L. Ramu is subject to the personal jurisdiction of this Court.

13.

L. Ramu may be served with process at his residence located at 1201 Ladson Court, Decatur, Georgia 30033, or wherever he may be found.

## FACTUAL ALLEGATIONS

14.

During the three years prior to the filing of this action (hereinafter "the Relevant Time Period") until April 29, 2016, Defendants owned and operated a nightclub in DeKalb County, Georgia under the trade name Shooter Alley ("the Club").

15.

At all times during the Relevant Time Period, the Club provided entertainment in the form of nude female dancers.

16.

At all times during the Relevant Time Period, J. Ramu was sole owner of the Club.

17.

At all times during the Relevant Time Period, L. Ramu was manager of the Club.

18.

Defendants employed Hinton as a dancer from 2009 through and until April 29, 2016.

19.

At all times during the Relevant Time Period, the Club was an "enterprise engaged in commerce or in the production of goods for commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206 (a).

20.

During 2013, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

21.

During 2014, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

22.

During 2015, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

23.

During 2016, the Club had two or more "employees engaged in commerce" as defined by 29 U.S.C. § 203(s)(1)(A).

24.

At all times during the Relevant Time Period, the Club was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped from outside of the State of Georgia,

and having multiple employees regularly processing out-of-state credit card sales in the furtherance of its business.

25.

During 2013, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

26.

During 2014, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

27.

During 2015, the Club had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

28.

At all times during the Relevant Time Period, the Club had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

29.

At all times material hereto, J. Ramu was involved in the day to day operation

of the Club.

30.

At all times material hereto, Shooter Alley vested J. Ramu with supervisory authority over Hinton.

31.

At all times material hereto, J. Ramu exercised operational control over Hinton's work activities.

32.

At all times material hereto, J. Ramu exercised supervisory authority over Hinton.

33.

At all times material hereto, J. Ramu scheduled Hinton's working hours or supervised the scheduling of Hinton's working hours.

34.

At all times material hereto, J. Ramu exercised authority and supervision over Hinton's compensation.

35.

At all times material hereto, J. Ramu was an "employer" of Hinton as defined in FLSA § 3(d), 29 U.S.C. §203(d).

36.

At all times material hereto, Hinton was an "employee" of J. Ramu as defined

in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

37.

At all times material hereto, L. Ramu was involved in the day to day operation of the Club.

38.

At all times material hereto, Shooter Alley vested L. Ramu with supervisory authority over Hinton.

39.

At all times material hereto, L. Ramu exercised supervisory authority over Hinton.

40.

At all times material hereto, L. Ramu scheduled Hinton's working hours or supervised the scheduling of Hinton's working hours.

41.

At all times material hereto, L. Ramu exercised authority and supervision over Hinton's compensation.

42.

At all times material hereto, L. Ramu was an "employer" of Hinton as defined in FLSA § 3(d), 29 U.S.C. §203(d).

43.

At all times material hereto, Hinton was an "employee" of L. Ramu as defined

in the FLSA § 3(e)(1), 29 U.S.C. § 203(e)(1).

44.

At all times during the Relevant Time Period, the Club directly and indirectly controlled its dancers' work schedules.

45.

At all times during the Relevant Time Period, the Club's managers exercised the authority to require dancers to change their attire.

46.

At all times during the Relevant Time Period, the Club's managers exercised the authority to require dancers to change their hairstyle.

47.

At all times during the Relevant Time Period, the Club's managers exercised the authority to require dancers to change their makeup**.**

48.

At all times during the Relevant Time Period, the Club's managers exercised the authority to impose discipline upon its dancers, including warnings, suspensions, and terminations.

49.

At all times during the Relevant Time Period, the Club's managers supervised dancers on a day-to-day basis.

50.

At all times during the Relevant Time Period, the Club paid all costs associated with advertising, marketing, and promoting the Club.

51.

At all times during the Relevant Time Period, the Club's managers exercised the authority to prohibit a dancer from performing because of tardiness.

52.

At all times during the Relevant Time Period, the Club employed a disc jockey ("the DJ") who operated the club's music and made announcements to customers and dancers.

53.

At all times during the Relevant Time Period, the DJ on duty determined the order and rotation by which dancers would be scheduled to perform.

54.

At all times during the Relevant Time Period, the Club enforced a mandatory check-out process its dancers.

55.

At all times during the Relevant Time Period, the Club a dressing room for its dancers.

56.

At all times during the Relevant Time Period, the Club posted notices and work rules for its dancers in the dressing room.

57.

At all times during the Relevant Time Period, the Club's managers ensured that dancers complied with its rules and policies.

58.

At all times during the Relevant Time Period, the Club did not require its dancers have prior experience or training prior to hire.

59.

At all times during the Relevant Time Period, the Club advertised its business.

60.

At all times during the Relevant Time Period, such advertisements included photographs of scantily clad women.

61.

At all times during the Relevant Time Period, the presentation of nude female dancing was integral to the Club's business success.

62.

At all times during the Relevant Time Period, as a matter of economic reality Hinton was an "employee" as that term is used in the FLSA, rather than an independent contractor.

63.

At all times during the Relevant Time Period, Defendants were Hinton's "employers" as defined in FLSA § 3(d), 29 U.S.C. § 203(d).

64.

At all times during the Relevant Time Period, Hinton was not exempt from the minimum wage requirements of the FLSA by reason of any exemption.

65.

From approximately 2009 until 2014, Hinton normally worked as a dancer for Defendants shifts that began at 4:00 p.m. and ended between 3:00 and 4:00 a.m. ("night shifts"), 4 -5 days per week.

66.

From approximately 2015 through April 29, 2016, Hinton normally worked 3-4 night shifts per week.

67.

At all times during the Relevant Time Period, Defendants failed to pay Hinton any wages or compensation whatsoever.

68.

At all times during the Relevant Time Period, Hinton's sole form of remuneration was the receipt of tips from Defendants' customers.

69.

At all times material hereto, in conjunction with each shift Hinton worked,

Defendants required her to pay a portion of her tips as "fees" to the Club and its owners, agents, and employees.

70.

At all times material hereto, in conjunction with each shift Hinton worked, Defendants required Hinton to pay "fees" to security personnel, DJs, house moms, doormen, and managers.

71.

At all times during the Relevant Time Period, Hinton paid approximately $100.00 in such fees per shift.

## **Count One**

## **Failure to Pay Minimum Wage Violation of 29 U.S.C. § 206**

72.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

73.

At all times material hereto, Hinton was an employee covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

74.

At all times material hereto, Defendants failed to compensate Hinton at an hourly rate above or equal to the minimum wage.

75.

At all times material hereto, Defendants willfully failed to compensate Hinton at an hourly rate above or equal to the FLSA minimum wage.

76.

Hinton is entitled to payment of minimum wages by Defendants, jointly and severally, in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

77.

Defendants' mandate that Plaintiff pay fees to the Club and its managers, and other employees violated the "free and clear" requirement of 29 CFR 531.35.

78.

Hinton is entitled to recover from Defendants, jointly and severally, all fees and fines that the Club required her to pay as a condition of employment.

79.

As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiff is entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

80.

As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Hinton for her costs of litigation, including her reasonable attorney's fees, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

## COUNT II

## Failure to Pay an Overtime Premium

## in Violation of 29 U.S.C. § 207

81.

The allegations in all previous paragraphs are incorporated by reference as if fully set out herein.

82.

At all times material hereto, Hinton was an employee covered by the FLSA and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

83.

During the years 2013 and 2014, Hinton regularly worked in excess of forty (40) hours per week as a dance for Defendants.

84.

During the years 2013 and 2014, Defendants failed to compensate Hinton at one-and-one-half times her regular rate for work in excess of forty (40) hours in any work week.

85.

During the years 2013 and 2014, Defendants willfully failed to Hinton at one and one half times her regular rate for work in excess of forty (40) hours in any work week.

86.

Hinton is entitled to payment from Defendants, jointly and severally, of due but unpaid overtime in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

87.

As a result of the underpayment of overtime compensation as alleged above, Hinton is entitled to an award of liquidated damages from Defendants, jointly and severally, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

88.

As a result of the underpayment of overtime compensation as alleged above, Defendants are jointly and severally liable to Hinton for her costs of litigation, including her reasonable attorney's fees in accordance with FLSA § 16(b); 29 U.S.C. § 216(b).

**WHEREFORE**, Plaintiff requests that this Court:

a.  Award Plaintiff an amount to be determined at trial against Defendants, jointly and severally, in due but unpaid minimum wages due under the FLSA plus additional like amounts in liquidated damages;

b.  Award Plaintiff an amount to be determined at trial against Defendants, jointly and severally, in due but unpaid overtime wages for the years

2013 and 2014 due under the FLSA plus additional like amounts in
liquidated damages;

c.     Award Plaintiff prejudgment interest on all amounts owed;

d.     Award Plaintiff compensation for all kickbacks paid by her to
Defendants;

e.     Award Plaintiff her reasonable attorney's fees and costs of litigation; and

f.     Award any and such other relief this Court deems just, equitable and
proper.

Respectfully submitted,

DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC

3100 Centennial Tower
101 Marietta Street NW
Atlanta, GA 30303
404.979.3150
404.979.3170 (fax)
charlesbridgers@dcbflegal.com
kevin.fitzpatrick@dcbflegal.com

*/s/ Charles R. Bridgers*
Charles R. Bridgers
Georgia Bar No. 080791

*/s/ Kevin D. Fitzpatrick, Jr.*
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375